[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #102
The plaintiffs, Margaret and Stephen Povroznik, have filed this action alleging that for a number of years they purchased home heating oil from the defendant, Rivercliff Fuel, Inc. On December 29, 1999 an employee of Rivercliff Fuel made a delivery of approximately 160 gallons of oil to the plaintiffs' home. The employee, however, pumped the oil through an abandoned oil filler pipe directly into the basement. The oil damaged the basement and the plaintiff also incurred other consequential losses. The defendant, Utica National Insurance Company, is Rivercliff Fuel's liability insurance carrier. The defendants, Earth Technology, Inc. and Ambrose Associates, Inc., were hired by the carrier to clean up the oil spill and remediate other damage. The plaintiff alleges that the actions of Earth Technology and Ambrose Associates caused further damage to the property.
The complaint is in eight counts.[1] The defendant, Utica National Insurance Company, has moved to strike counts five, six and eight of the complaint.[2] In support of its motion, Utica National Insurance has filed a memorandum. The plaintiff has filed a memorandum in opposition.
Practice Book § 10-39 provides that "[w]henever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint, . . . or of any one or more counts thereof; to state a claim upon which relief can be granted, . . . that party may do so by filing a motion to strike the contested pleading or part thereof." "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted; internal quotation marks omitted.) Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). "A motion to strike admits all CT Page 14752 facts well pleaded." Parsons v. United Technologies Corp., 243 Conn. 66,68, 700 A.2d 655 (1997). "[A] trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990). If the facts of the complaint are not legally sufficient to state a cause of action, the complaint should be stricken.Gulak v. Gulak, 30 Conn. App. 305, 620 A.2d 181 (1993).
 I
Utica National Insurance has moved to strike count five based on negligent infliction of emotional distress. The Connecticut Supreme Court first recognized a cause of action for negligent infliction of emotional distress in Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 398 A.2d 1180 (1978). The court held that in order to state such a claim, the plaintiff has the burden of pleading both that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." Id.; see alsoAncona v. Manafort Bros., Inc., 56 Conn. App. 701, 713, 746 A.2d 184, cert. denied, 252 Conn. 954, 749 A.2d 1202 (2000). "In order to [bring] a negligent infliction of emotional distress claim, a plaintiff must allege facts showing that the defendant negligently breached a duty owed to the plaintiff" Montinieri v. Southern New England Telephone Co., supra, 341;DeLeo v. Reed, judicial district of Stamford/Norwalk at Stamford, Docket No. 172435, (January 3, 2000, Hickey, J.). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." Zamstein v. Marvasti, 240 Conn. 549, 558,692 A.2d 781 (1997).
Utica National Insurance claims that it had no duty to the plaintiff and it could not be liable for negligent infliction of emotional distress. Prior to obtaining an enforceable judgment, an insurer has no duty to settle an insurance claim with a third-party claimant fairly.[3]
This is because an insurance company's duty is to its insured, not to the claimant. Weinberg v. Isom, judicial district of Stamford/Norwalk at Stamford, Docket No. 140152 (December 26, 1995, Lewis, J.). The plaintiff claims that the cause of action is not based on the defendant's failure to fairly settle the claim, but on the its failure to timely and adequately remediate the damage to its property and to adequately pay for all of its losses. The plaintiff analogizes the actions of Utica National Insurance to those of someone who acts gratuitously, in seeking to impose a duty on the defendant to act. Any actions by the defendant, however, were clearly not gratuitous and were done in furtherance of its duty to CT Page 14753 its insured, Rivercliff Fuel., to remedy damages allegedly caused by its insured. Whether settlement is made by the payment of money, by repair or replacement of property, by reimbursement for expenses incurred or by some other manner, Utica National Insurance was clearly acting in settlement of the potential claim against its insured. As an insurer has no duty to settle a claim fairly, no matter what manner of settlement is used, the insurer can not be liable for the negligent infliction of emotional distress claimed to be sustained by the claimant as a result of the settlement. Count five, therefore, fails to state a claim upon which relief can be granted. The motion to strike count five is granted.
 II
Utica National Insurance moves to strike count six, which was brought pursuant to General Statutes § 22a-452. The statute provides, in part,
 "[a]ny person . . . [who] contains or removes or otherwise mitigates the effects of oil or petroleum . . . resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby. (Emphasis added.)
"In construing a statutory provision, [the court] first look[s] to its language, and if that language is plain and unambiguous, [the court] need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579,590, 628 A.2d 1286 (1993). The statute expressly authorizes a cause of action against a person or firm where contamination results from the negligence or other actions of such person or firm. "The clear purpose of this provision is to encourage parties to pay for remediation by providing them with an opportunity to recoup at least some of their CT Page 14754 remediation costs from others who are also found to be responsible forthe contamination." (Emphasis added.) Knight v. F.L. Roberts Co.,241 Conn. 466, 475, 696 A.2d 1249 (1997). An allegation that the contamination was caused by the culpable conduct of the defendant is essential to an allegation under the statute. See Connecticut ResourcesRecovery Authority v. Refuse Gardens, Inc., 43 Conn. Sup. 83, 642 A.2d 762
(1993), aff'd, 229 Conn. 455, 642 A.2d 697 (1994).
The complaint expressly alleges that the contamination was caused by the negligence of Rivercliff Fuel. Even by construing the allegations of count six most favorably to the plaintiff; the only allegation against Utica National Insurance was that it "refus[ed] to expend the funds necessary for a complete clean-up of the contamination." An allegation that an insurer did not spend the money to adequately clean up oil contamination allegedly caused by its insured is not an allegation that the contamination was caused by the insurer. While it may be that a claim may lie against the insured for damage resulting from the insured's actions in causing contamination, a direct action against the insurer is not authorized under the statute absent an allegation that the action of the insurer caused the contamination. The motion to strike count six is granted.
 III
Utica National Insurance also moves to strike count eight, which was brought pursuant to General Statutes § 38a-815 et seq. General Statutes §§ 38a-815 through 38a-819 is known as Connecticut's Unfair Insurance Practice Act (CUIPA). Section 38a-815 of CUIPA prohibits unfair insurance practices and gives the insurance commissioner the power to determine whether an act or practice is unfair. Section 38a-816 of CUIPA defines unfair practices. The plaintiff alleges in count eight that Utica Insurance failed to acknowledge and act respecting the claim, failed to adopt standards for the investigation of the claim, failed to fully compensate the plaintiff and failed to effectuate a fair and equitable settlement of the claim even though liability has become reasonably clear. If actionable, the claims of the plaintiff would be unfair claim settlement practices under General Statutes § 38a-816 (6). Sections38a-817 through 38a-819 outline the procedures to be used by the insurance commissioner in enforcement of CUIPA and the penalties he may impose for a violation of CUTPA. Nothing in the statutory scheme of CUIPA authorizes a private right of action for an alleged violation of the act.
Our Supreme Court has repeatedly reserved decision as to whether a private right of action exists under CUIPA.[4] There is a split of authority among Superior Court judges whether a private right of action CT Page 14755 does exist. The majority of cases do not recognize a private right of action.[5] These holdings reason that there is no express authority in the act for a private action. Enforcement powers are given to the insurance commissioner. As CUIPA is a regulatory act which imposes criminal penalties, it must be read in a manner which limits, rather than expands civil liability. An examination of the purpose and the legislative history of CUIPA also do not support finding a private right of action. In addition, because a private right of action to enforce unfair insurance practices exists under Connecticut's Unfair Trade Practices Act, General Statutes § 42-110b, it is unlikely that the legislature intended two statutory causes of action to address the same conduct. Other Superior Court decisions, however, imply a private right of action in the act.[6] This court has considered the issue on two previous occasions and found the more persuasive arguments against implying a private right of action to enforce CUIPA violations,[7] The facts of this case present no reason for the court to change its previous position.
The court also notes that General Statutes § 38a-816 (6) expressly requires that the unfair claim settlement practices be committed or performed with such frequency as to indicate a general business practice. (Emphasis added.). The complaint states "[upon information and belief; Utica has engaged in the aforesaid conduct with such frequency as toindicate a general business practice."[8] This legal conclusion is not supported by any pleaded facts which would demonstrate that the plaintiff's claim is based on anything more than the handling of its claim by the defendant. More than an allegation concerning the handling of one claim is required to show that the defendant's unfair conduct was a general business practice. See Lees v. Middlesex Ins. Co., 229 Conn. 842,848-49, 643 A.2d 1282 (1994); Mead v. Burns, 199 Conn. 651, 659, 666,509 A.2d 11 (1986).[9] As there is no private right of action to bring a CUIPA claim and the complaint, as pleaded, does not allege sufficient facts showing that the alleged acts committed by the defendant were done with such frequency as to indicate a general business practice, the motion to strike count eight is granted.
MORAN, J.